

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**WYNET VERNESIA HARRELL,**

    Plaintiff,

    v.

**JAGUAR LAND ROVER NORTH AMERICA, LLC,**

    Defendant.

CIVIL ACTION NO. 2:23-cv-241

*MEMORANDUM OPINION AND ORDER*

Before the Court is Plaintiff Wynet Vernesia Harrell's ("Plaintiff") Motion for Default Judgment ("Plaintiff's Motion") pursuant to Federal Rule of Civil Procedure 55(b) and Defendant Jaguar Land Rover North America, LLC's ("Defendant") Motion for Leave to File Answer and Affirmative Defenses Out of Time and Set Aside Entry of Default ("Defendant's Motion") pursuant to Federal Rules of Civil Procedure 6(b) and 55(c). Mot. Default J., ECF No. 8; Mot. Leave File Answer & Aff. Defenses & Set Aside Default, ECF Nos. 10–11 ("Def.'s Mot."). Having reviewed the parties' filings in this case, the Court finds that a hearing on this Motion is not necessary, and this matter is now ripe for judicial determination. *See* E.D. Va. Local Civ. R. 7(J); Def.'s Mem. Supp., ECF No. 12; Pl.'s Resp. Opp'n, ECF No. 13; Def.'s Reply, ECF No. 16. For the reasons stated herein, Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

    **I.**    **FACTUAL AND PROCEDURAL HISTORY**

On June 2, 2023, Plaintiff filed a Complaint alleging that Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–12 (2018), and the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code Ann. §§ 59.1-207.9–.16:1 (2023). Compl., ECF No. 1.

1

Plaintiff alleges facts satisfying both federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332, respectively. *Id.* at ¶¶ 1–2, 20. A summons issued to Defendant on June 15, 2023. ECF No. 3. On July 10, 2023, a summons and copy of the Complaint were forwarded by certified mail to Defendant, and an affidavit of service of process on the Commonwealth of Virginia was returned executed on July 12, 2023. ECF No. 4. Defendant failed to timely file a responsive pleading within the 21-day timeframe, which expired on August 2, 2023. Fed. R. Civ. P. 6(a)(1), 12(a)(1)(A)(i).

On August 3, 2023, the Clerk issued a Notice to counsel requesting a status report or a request for entry of default within 15 days. ECF No. 5. Plaintiff requested entry of default on August 7, 2023. ECF No. 6. On August 8, 2023, the Clerk filed an entry of default on Defendant pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 7. On August 9, 2023, Plaintiff filed a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). Mot. Default J., ECF No. 8.

On September 18, 2023, Defendant filed its Motion for Leave to File Answer and Affirmative Defenses Out of Time and Set Aside Entry of Default pursuant to Federal Rules of Civil Procedure 6(b) and 55(c), as well as a Memorandum in Support of the Motion. Def.'s Mot., ECF Nos. 10–11; Def.'s Mem. Supp., ECF No. 12. Plaintiff responded in opposition to Defendant's Motion on October 2, 2023. Pl.'s Resp. Opp'n, ECF No. 13. Defendant replied on October 10, 2023. Def.'s Reply, ECF No. 16. Neither trial nor discovery are currently scheduled in this case.

## II. LEGAL STANDARD

### A. Motion to Set Aside Default: Rule 55(c)

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). When compared to Rule 60(b)'s "excusable neglect" standard, Rule 55(c)'s "good cause" standard "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 420 (4th Cir. 2010). The Fourth Circuit has not defined "good cause" but instructs courts deciding whether to grant a Rule 55(c) motion to consider six factors: (1) whether the moving party has a meritorious defense; (2) whether the moving party acts with reasonable promptness; (3) the defaulting party's culpability, i.e., personal responsibility for the default; (4) the prejudice to the non-moving party; (5) whether the non-moving party has a history of dilatory action; and (6) the availability and effectiveness of less drastic sanctions. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006). Generally, a default is set aside under Rule 55(c) when the moving party acts with reasonable promptness and alleges a meritorious defense. *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton*, 616 F.3d at 417. Therefore, "Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Id.* at 421 (quoting *Lolatchy*

3

*v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987)). The disposition of motions made under Rule 55(c) lies largely in the discretion of the trial judge. *Consol. Masonry*, 383 F.2d at 251.

**B.      Motion for Leave to File Answer and Affirmative Defenses Out of Time: Rule 6(b)**

Federal Rule of Civil Procedure 6(b) permits a court to extend the time to file a pleading "for good cause . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). In general, courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" so long as the neglect is "excusable." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 388 (1993). "[T]he burden of demonstrating excusability lies with the party seeking the extension . . . ." *Thompson v. E.I. Dupont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)). To determine excusability, the Court looks to the *Pioneer* factors: "the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Batton v. Commc'ns Workers of Am., AFL-CIO*, No. 2:13cv426, 2014 WL 5742409, at *8 (E.D. Va. Aug. 4, 2019) (quoting *Pioneer*, 507 U.S. at 395). In the Fourth Circuit, "the most important of the *Pioneer* factors is the reason for delay and whether it was within the reasonable control of the party who filed the untimely pleading." *Id.* at *9 (citing *Thompson*, 76 F.3d at 534). Yet "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392 (citation omitted). Overall, the *Pioneer* analysis is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 389.

4

### III.     DISCUSSION

#### A.    Motion to Set Aside Default

Under Rule 55(c)'s more liberal "good cause" standard, the Court finds that the *Payne* factors and the Fourth Circuit's strong preference that defaults be avoided require the Court to set aside the entry of default. *See Colleton*, 616 F.3d at 417, 421.

##### i.    Meritorious Defense

Plaintiff alleges that "[m]ultiple warning lights" in her vehicle indicate that it has "numerous manufacturing and workmanship defects that have been the subject of repair multiple times and the manufacturing and workmanship defects still exist." Compl. ¶ 6. She alleges that even though the vehicle was "out of service for sixty days as a result of [Defendant's] repair attempt," Defendant failed to "repair or replace the [defects] within a reasonable time." *Id.* ¶¶ 6, 12. Plaintiff claims Defendant's "Limited Warranty [on the vehicle] has failed its essential purpose" and that Defendant also "breached its implied Warranty of Merchantability," thereby violating the Magnuson-Moss Warranty Act. *Id.* ¶¶ 11–13 (citing 15 U.S.C. §§ 2304(a), 2308, 2310(d)). Plaintiff also alleges that because the vehicle was out of service for over thirty days, it is "presumed to have been subject to repair a reasonable number of attempts and is significantly impaired in its use, market value, and safety," in violation of the Virginia Motor Vehicle Enforcement Warranty Act. *Id.* ¶¶ 6, 19 (citing Va. Code Ann. § 59.1-207.13(B)(3)).

Defendant argues it has a meritorious defense to Plaintiff's Complaint. First, Defendant "avers that it complied with the requirements and obligations set forth in its new vehicle limited warranty and that any alleged nonconformity that is actually shown to exist does not substantially impair the use, value, or safety of the vehicle." Def.'s Mem. Supp. at 5. In support of this assertion, Defendant cites its proposed Answer and Affirmative Defenses. Def.'s Mem. Sup. Ex. A, ECF No.

5

12-1. Second, Defendant submits two repair orders it received from Plaintiff's counsel that "suggest that an authorized dealership [of Defendant's] performed warranty repairs and resolved Plaintiff's complaints concerning the vehicle." *See* Def.'s Mem. Supp. at 6; Def.'s Mem. Supp. Ex. C., ECF No. 12-3 ("Ex. C"). Defendant asserts the "repair orders do not reflect that Plaintiff returned with complaints of the same issue" and that Defendant's "compliance with its warranty obligations constitutes a meritorious defense to Plaintiff's" claims. Def.'s Mem. Supp. at 6.

Plaintiff contends that Defendant makes no more than "bare allegations of a meritorious defense," which are insufficient to satisfy the first *Payne* factor. Pl.'s Resp. Opp'n at 3 (citing *Consol. Masonry*, 383 F.2d at 251–52). Plaintiff also argues Defendant fails to rebut the statutory "presumption that the vehicle is significantly impaired" because it was out of service for over 30 days. *Id.* at 5 (citing Va. Code Ann. § 59.1-207.13(B)(3)). Defendant replies that by submitting repair order forms stating the "vehicle is repaired," it has met its burden by "proffer[ing] third-party evidence that directly contests the existence of a statutory nonconformity, and the Motor Vehicle Warranty Enforcement Act creates an affirmative defense for any defendant that can show a vehicle lacks a significant impairment to its use, market value, or safety." Def.'s Reply at 5 (citing Va. Code Ann. § 59.1-207.13(G)(1)).

"[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). "[B]are allegations of a meritorious defense" are insufficient to proffer such evidence. *Consol. Masonry*, 383 F.2d at 251–52. Instead, the moving party must "allege specific facts beyond simple denials or conclusionary statements." *Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d

6

710, 724 (E.D. Va. 2011) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Defendant has met its burden to demonstrate it has a meritorious defense by proffering the repair orders. *See* Def.'s Mem. Supp. Ex. C. The repair orders state "VEHICLE IS DRIVING FINE" and "lights no longer come on[,] vehicle is repaired." Def.'s Mem. Supp. Ex. C. at 1, 3. At trial, these statements may show the vehicle has no "defect or malfunction," "significant impairment," or other warranty nonconformity—either because none ever existed or because Defendant repaired it while the vehicle was out of service. 15 U.S.C. § 2304(a)(4); Va. Code Ann. § 59.1-207.13(G)(1). Indeed, Defendant's bare assertions that it complied with its warranty obligations and that any alleged nonconformity does not impair the use, value, or safety of the vehicle are conclusory statements insufficient to show a meritorious defense. *See* Def.'s Mem. Supp. at 5. Yet Defendant's proffer of the repair orders, "if believed," would permit a factfinder to find in favor of the Defendant, meaning Defendant has raised a meritorious defense. *Moradi*, 673 F.2d at 727. Therefore, this factor weighs in favor of setting aside default.

### ii. Reasonable Promptness

Defendant argues it has acted with reasonable promptness to respond to the Complaint. Defendant claims it was delayed in responding because of either a delay in delivery by the United States Postal Service ("USPS") or an "inadvertent delay by [Defendant's] Customer Relationship center in forwarding mail to [Defendant's] legal department." Def.'s Mem. Supp. at 2, 4. Defendant claims it is unable to determine when the Complaint arrived at its headquarters via certified mail, but claims its legal department received the Complaint on August 28, 2023. *Id.* at 2. Defendant submits copies of the envelope that contained the Complaint, as well as an image depicting the online USPS tracking information for the envelope. *See* Def.'s Mem. Supp. Ex. B.

7

The front of the envelope shows it was addressed to the attention of Defendant's Customer Relationship Center. *See id.* at 1. The reverse side of the envelope has a section labeled "COMPLETE THIS SECTION ON DELIVERY," but it contains no delivery information. *See id.* at 2. The tracking information purports to show that the envelope "Departed [a] USPS Regional Facility" in Teterboro, New Jersey on July 21, 2023 and was "In Transit to Next Facility" on July 25, 2023, but it does not show when the envelope was "Out for Delivery" or "Delivered."[1] *See id.* at 4.

Defendant avers that once its legal department received the Complaint on August 28, 2023, it "worked promptly to retain Virginia counsel" and hired its current counsel on September 7, 2023. Def.'s Mem. Supp. at 2. Defendant also claims that "between September 7 and the date of [its Motion,] [Defendant] took steps to investigate the delay in receiving the Complaint." *Id.* at 6. On reply, Defendant offers a Declaration Supporting Defendant's Motions for Leave to File an Answer and to Set Aside Default made by Christine DiDomizio, Defendant's Legal Operations Lead. Decl. Supp. Def.'s Mot., ECF No. 16-1 ("DiDomizio Decl."). In her Declaration, Ms. DiDomizio attests to Defendant's representations in its Supporting Memorandum and states that Defendant's "legal department lacked knowledge of this action before August 28, 2023, and it did not deliberately delay its response." *See id.* ¶¶ 4–7.

Plaintiff counters that Defendant presents no "reasonable excuse for its neglect." Pl.'s Resp. Opp'n at 2. Plaintiff argues that Jaguar submitted no affidavit with its Motion and that any affidavit would only show that Defendant does not know why it went into default, meaning it "cannot present a reasonable excuse for its neglect." Pl.'s Resp. Opp'n at 2. Plaintiff argues that

---

[1] As of November 30, 2023, the USPS website reports no further information regarding the envelope's delivery status. *See* USPS Tracking, https://tools.usps.com/go/TrackConfirmAction_input?origTrackNum=70222410000087371824 (last visited Nov. 30, 2023)

8

without such showing, "there can be no relief from default." *Id.* Plaintiff did not request an opportunity to respond to Defendant's Reply or the DiDomizio Declaration.

"Reasonable promptness is determined at the discretion of the trial judge and is evaluated 'in light of the facts and circumstances of each occasion.'" *Pinpoint*, 812 F. Supp. 2d at 726 (citing *Moradi*, 673 F.2d at 727). Here, Defendant's delay was inadvertent, and it was reasonably prompt in responding to Plaintiff's Complaint and the entry of default. *See* DiDomizio Decl. ¶ 4–7. While Plaintiff argues Defendant's excuse for delay is not "reasonable," Plaintiff does not argue that Defendant did not act promptly to respond after August 28, 2023. Further, Defendant has proffered evidence showing that the Complaint was still "In Transit" and not yet received by its Customer Relationship Center as late as July 25, 2023. *See* Def.'s Mem. Supp. Ex. B at 4. Although Defendant does not know exactly why its legal department did not receive the Complaint within the timeframe to file a responsive pleading, Defendant admits that its own internal miscommunications may be to blame. Further, once the legal department received the Complaint on August 28, 2023, Defendant secured counsel within 10 days and filed its Motion and a proposed Answer and Affirmative Defenses within 21 days on September 18, 2023. *See* Def.'s Mem. Supp. at 2, 5; Def.'s Mem. Supp. Ex. A. Defendant also responded before the Court entered default judgment. *See Pinpoint*, 812 F. Supp. 2d at 726. "Because Defendant's promptness in response to Plaintiff's motion for default judgment should be liberally construed in Defendant's favor, this factor counsels in favor of setting aside default." *Id.*

### iii. Personal Responsibility of the Defaulting Party

The Court must consider "whether Defendant is ultimately responsible for its failure to answer Plaintiff's Complaint in a timely manner." *Id.* Defendant does not know whether the Complaint was delayed by USPS or delayed within its own headquarters between its Customer

9

Relationship Center and legal department. Defendant does not assert improper service of process, meaning the Court assumes service was proper and that Defendant received the Complaint at its headquarters with sufficient time to file a responsive pleading or move for an extension of time to file. Although the facts here are not entirely complete, the Court finds it likely that a mix of circumstances outside Defendant's control and Defendant's own internal miscommunications between departments caused Defendant's delay, meaning Defendant bears at least some responsibility. Nevertheless, as explained further below regarding Defendant's Motion for Leave, the Court finds Defendant's delay excusable considering the totality of circumstances and Defendant's efforts to rectify the delay. Plaintiff does not allege Defendant deliberately delayed in responding, and Ms. DiDomizio states in her declaration that the delay was "inadvertent." DiDomizio Decl. ¶ 7. At most, Defendant's responsibility weighs slightly against setting aside default.

    iv.    **Remaining *Payne* Factors**

Plaintiff does not contend that she is prejudiced, that Defendant has a history of dilatory action, or that no less drastic sanction than default judgment exists. No facts suggest these factors weigh against Defendant. Further, "[i]n the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418. Therefore, these *Payne* factors weigh in favor of setting aside default.

    v.    **Disposition on Motion to Set Aside Default**

Construing the *Payne* factors liberally and keeping in mind the Fourth Circuit's "strong preference" to avoid default, the Court finds that the *Payne* factors collectively demonstrate "good cause" exists to set aside default. *Colleton*, 616 F.3d at 417, 421; Fed. R. Civ. P. 55(c). Therefore,

Defendant's Motion to Set Aside Default pursuant to Rule 55(c) is GRANTED, and Plaintiff's Motion for Default Judgment is DENIED.

B.     **Motion for Leave to File Answer and Affirmative Defenses Out of Time**

Defendant requests leave to file its Answer and Affirmative Defenses out of time. Defendant argues it has committed only "excusable neglect" and good cause exists to allow a late filing pursuant to Federal Rule of Civil Procedure 6(b)(1). Def.'s Mem. Supp. at 2–5. Defendant makes the same arguments and representations as above: its delay does not significantly impact judicial proceedings in this case; the delay was "inadvertent" and either caused by a delivery issue with USPS or internal miscommunications within Defendant's headquarters; and Defendant promptly engaged counsel, communicated with Plaintiff, and investigated the cause of delay once its legal department received the Complaint. *Id.* at 2, 4–5; Def.'s Reply at 4.

Plaintiff counters that "[w]ithout knowing why it went into default, [Defendant] cannot present a reasonable excuse for its neglect." Pl.'s Resp. Opp'n at 2. Plaintiff argues that Defendant does not "describe what, if anything, it has done to learn why it went into default" and claims that any affidavit would only show that Defendant "does not know why it went into default." *Id.* Again, Plaintiff does not address the DiDomizio Declaration because Defendant filed the Declaration on reply, and Plaintiff did not request an opportunity to respond to it.

Denying Defendant leave to file after granting the Motion to Set Aside Default would simply recreate the circumstances leading to entry of default, leading to an anomalous result that would contradict the Fourth Circuit's strong preference to resolve cases on their merits. *See Colleton*, 616 F.3d at 417; *Roberts v. Shaw Grp., Inc.*, 3:08CV46–HEH, 2008 WL 4500036, at *3 (E.D. Va. Oct. 7, 2008) (granting motion for leave to file answer out of time considering, in part, the preference to avoid default). These considerations establish good cause to grant Defendant's

11

Motion for Leave to File Answer and Affirmative Defenses Out of Time. Fed. R. Civ. P. 6(b). Additionally, for many of the same reasons that persuade the Court to set aside default under the *Payne* factors, the *Pioneer* factors show Defendant's neglect is excusable.

First, Plaintiff has not claimed she would be prejudiced by a late filing, and there is no evidence that prejudice to Plaintiff would result. Second, Defendant's delay does not impact judicial proceedings in this matter because no trial or discovery schedule has been set. Although Defendant filed its Motion over two months after Plaintiff mailed service of process to Defendant's headquarters, the Complaint was still "In Transit" to Defendant's headquarters as of July 25, 2023, and Defendant filed its Motion and proposed Answer and Affirmative Defenses 21 days after its legal department received the Complaint and became aware of the action on August 28, 2023. *See* Def.'s Mem. Supp. at 2, 5; Def.'s Mem. Supp. Ex. B at 4. Given "the parties are still early in the stages of litigation," Defendant's delay was not so long as to become inexcusable. *Hidden Valley Ranch Holdings, LLC v. Luxury Auctions Mktg., Inc.*, 3:17-cv-00320-RJC-DSC, 2018 WL 2201590, at *3 (W.D.N.C. May 14, 2018) (granting defendant's motion for leave to file answer out of time where defendant failed to file a responsive pleading until several months after being ordered to file within a 14-day period).

Third, it is clear Defendant acted in good faith by both moving to set aside default and providing a proposed Answer and Affirmative Defenses within a 21-day period. *See* Def.'s Mot.; Def.'s Mem. Supp. Ex. A. Defendant was also prompt in retaining counsel, investigating the cause of delay, and corresponding with Plaintiff. *See* Def.'s Mem. Supp. at 2, 4; DiDomizio Decl. Defendant's "diligence in seeking to correct the error... bears on the court's exercise of discretion." *Penn-America Ins. Co. v. White Plains, Inc.*, No. 2:19cv57, 2019 WL 13160135, at *3 (E.D. Va. Oct. 24, 2019) (citing *Robinson v. Wix Filtration Co.*, 599 F.3d 403, 413 (4th Cir. 2010)).

Finally, assuming that service on Defendant was proper and Defendant received the Complaint with sufficient time to file a responsive pleading or move for an extension of time, Defendant bears at least some degree of responsibility for its delay, although inadvertent. While this is the most important factor, *see Batton*, 2014 WL 5742409, at *9, excusable neglect is "not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392. Plaintiff cites no cases supporting its argument that Defendant must know the exact cause of delay to show excusable neglect. "In recent cases where this court has denied leave to amend, the delay has been . . . either unexplained or insufficiently justified. Generally, these cases involve errors tainted by evidence of laxity or the disregard of known obligations." *Penn-America*, 2019 WL 13160135, at *3 (collecting cases). Defendant has been diligent and forthcoming in investigating, rectifying, and reporting on its inadvertent delay. *See* Def.'s Mem. Supp. at 2; Def.'s Mem. Supp. Ex. B; DiDomizio Decl. Similar to the third *Payne* factor above, this *Pioneer* factor only weighs slightly against denying Defendant's Motion for Leave, if at all, and it does not warrant denial on its own.

"[T]aking account of all relevant circumstances surrounding the [Defendant's] omission," the Court finds Defendant's excuse for its inadvertent delay—either delayed delivery by USPS or Defendant's internal miscommunications—is reasonable. *Pioneer*, 507 U.S. at 389; *see Corbett v. Perry*, No. 3:18-cv-103-MOC, 2019 WL 5395282, at *1–2 (W.D.N.C. Oct. 21, 2019) (granting request for extension of time to file responsive pleading after defendant mistakenly believed he forwarded service of process to his agents, who "usually" forwarded all documents to his insurance carrier and counsel). Accordingly, the Court finds Defendant committed "excusable neglect" in failing to timely respond to the Complaint, and there is good cause to allow Defendant to file its proposed Answer and Affirmative Defenses out of time. Fed. R. Civ. P. 6(b)(1).

For these reasons, Defendant's Motion for Leave to File Answer and Affirmative Defenses Out of Time is GRANTED. "In order to minimize any prejudice to Plaintiff, the Court will not allow Defendant to file a new answer." *Hidden Valley Ranch Holdings*, 2018 WL 2201590, at *3. Rather, Defendant is ORDERED to file the proposed Answer and Affirmative Defenses attached to its Supporting Memorandum forthwith. *See* Def.'s Mem. Supp. Ex. A.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Leave to File Answer and Affirmative Defenses Out of Time and Set Aside Entry of Default, ECF Nos. 10–11, is **GRANTED**. Plaintiff's Motion for Default, ECF No. 8, is **DENIED**. Defendant is **ORDERED** to file its proposed Answer and Affirmative Defenses, Def.'s Mem. Supp. Ex. A, within **FIVE (5) DAYS** from the date of this Order.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 19, 2023

Raymond A. Jackson
United States District Judge